**John A. WAELTZ and Herbert A. Johnson, Jr., Plaintiffs,**

v.

**THE DELTA PILOTS RETIREMENT PLAN, Defendant.**

**No. 01–CV–0087–MJR.**

United States District Court, S.D. Illinois.

March 30, 2001.

Judy L. Cates, Steven A. Katz, Douglas R. Sprong, Carr, Korein et al., Swansea, IL, for John A. Waeltz, Herbert A Johnson, Jr.

Thomas E. Jones, Thompson, Coburn, St. Clair County, Belleville, IL, Richard J. Pautler, Thompson Coburn, St. Louis, MO, Philip C. Cook, Patrick C. DiCarlo, H. Douglas Hinson, Alston & Bird, Atlanta, GA, for Delta Pilots Retirement Plan.

## MEMORANDUM AND ORDER

REAGAN, District Judge.

### I. Introduction

On February 9, 2001, John Waeltz and Herbert Johnson, Jr. filed a putative class action suit in this Court against the Delta Pilots Retirement Plan, a defined benefit plan under the Employee Retirement Income Security Act of 1974 or "ERISA," 29 U.S.C. § 1001, et seq.[1]

Waeltz, a retired Delta pilot who (until recently) resided in Belleville, Illinois, and Johnson, an active Delta pilot who resides in O'Fallon, Illinois, allege that the Delta Pilots Retirement Plan uses a method for calculating lump sum distributions which results in Plan participants receiving less than the total accrued benefits to which they are entitled.[2] Moreover, Waeltz and Johnson claim that the Plan's computation of lump sum distributions violates ERISA, the Internal Revenue Code, and regulations issued by the Department of the Treasury.

Approximately 9,500 active Delta pilots and 2,740 retired Delta pilots participate in the Plan (see Piper Affidavit, Exh. 7 to Doc. 11). Waeltz and Johnson ("Plaintiffs") seek to represent two classes of Plan participants: (1) those who have received, or will have the right to receive, a

---

1. A defined benefit plan entitles a plan participant to a specified pension benefit, usually based primarily on the participant's years of service and wages, payable to the participant periodically for the rest of his life. See, e.g., Brengettsy v. LTV Steel (Republic) Hourly Pension Plan, 241 F.3d 609, 610 (7th Cir.2001).

2. Belleville and O'Fallon are located within this Judicial District.

lump sum distribution from the Plan; and (2) those who accrued benefits under the "Minimum Benefit" formula used by the Plan but did not receive the full value of the Minimum Benefit at retirement. Each of the two proposed classes contains thousands of Plan participants.

The Court has granted extensions of the briefing deadlines on Plaintiffs' motion for class certification. Now before the Court, fully briefed, is the Plan's February 22, 2001 motion to transfer venue (Doc. 4).

In their complaint, Plaintiffs assert that venue is proper in the Southern District of Illinois under 29 U.S.C. § 1132(e)(2), "in that the Plan may be found here." This assertion lies at the heart of the dispute presented to the Court in numerous pleadings (memoranda, affidavits, exhibits, and related documents) and further advanced through oral arguments at a hearing conducted on March 29, 2001. Having taken the motion under advisement at the conclusion of the hearing, and having carefully reviewed the voluminous record before it, the Court now rules as follows.

## II. *Analysis of Motion to Transfer*

The ERISA venue provision, 29 U.S.C. § 1132(e)(2), states:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found....

As mentioned above, Plaintiffs' complaint asserts that venue is proper here, because the Plan "may be found" in the Southern District of Illinois (Complaint, Doc. 1, p. 1, ¶ 5). More specifically, Plaintiffs contend that the Plan may be found here, because (a) this Court has personal jurisdiction over the Plan, and (b) several Plan participants reside here (*see* Doc. 12, pp. 5–6).

The Plan contends that venue is *not* proper here, that this lawsuit has no connection whatsoever with the Southern Dis-

trict of Illinois, and that this Court should dismiss this case or transfer it to the United States District Court for the Northern District of Georgia (Atlanta Division). For the reasons stated below, on the specific facts of the ERISA case before it, the Court finds that venue is not proper in this Judicial District under § 1132(e)(2).

The Southern District of Illinois is *not* the district where the Plan is administered. The Plan is administered in Atlanta, Georgia. The Southern District of Illinois is *not* the district where the alleged breach took place. The Plan calculates all benefits, communicates with all Plan participants, and authorizes payment of all benefits in Atlanta, Georgia. Obviously, the Plan does not "reside" here.

■ Nor is the Court persuaded that the Plan "may be found" in the Southern District of Illinois. Plaintiffs first argue that venue exists here, because the Court has personal jurisdiction over the Plan (*see* Doc. 12, pp. 3–4). For this argument, Plaintiffs rely on *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.,* 212 F.3d 1031, 1037 (7th Cir.2000). *Elite Erectors* did not hold that § 1132(e)(2) provides for nationwide *venue* in an ERISA case. Rather, *Elite Erectors* focused on personal jurisdiction and ERISA's nationwide service-of-process provision.

In *Elite Erectors,* the plaintiffs filed suit and obtained a default judgment against two defendants in the United States District Court for the Eastern District of Virginia. After registering the judgment in the United States District Court for the Southern District of Indiana, the plaintiffs initiated collection proceedings. The defendants then moved the Indiana federal court to declare the Virginia judgment void on the ground that the Eastern District of Virginia lacked personal jurisdiction over the defendants.

The Seventh Circuit concluded that the Virginia District Court had personal jurisdiction, so the Indiana district court must enforce the judgment. In the context of discussing personal jurisdiction, Judge Easterbrook distinguished limitations on state sovereignty from concerns about litigant convenience. He held that the service-of-process component of § 1132(e)(2) "comports with the Constitution." *Id.,* 212 F.3d at 1037. The Seventh Circuit did not directly address the *venue* provision of § 1132(e)(2), so that case does not stand for the proposition urged by Plaintiffs here.

Plaintiffs next argue that the Plan "may be found" in this District, because several Plan participants reside here. To support this proposition, Plaintiffs cite District Court decisions, such as *Doe v. Connors,* 796 F.Supp. 214 (W.D.Va.1992), *Foster G. McGaw Hospital v. Pension Trust District # 9,* 1992 WL 309571 (N.D.Ill.1992), and *Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829, 831 (E.D.Tex.1987).

Contrary to the suggestion made in Plaintiffs' parenthetical description of *Connors,* that case did *not* hold that an ERISA "plan 'may be found' where one or more of its participants is located" (Doc. 12, p. 5). *Connors* was a class action suit filed by beneficiaries of two coal mine worker trusts. The Western District of Virginia concluded that "a substantial contacts test is proper to determine venue" and rejected a defendant's argument that no "substantial nexus" existed between the beneficiaries and the forum. The Court emphasized that 9,000 plan beneficiaries lived in the forum state. *Id.,* 796 F.Supp. at 222. No such nexus has been demonstrated between this District and the Plan participants in the case *sub judice.*

*McGaw Hospital,* an unpublished decision from the Northern District of Illinois, did involve the ERISA venue provision, but the Court found venue to exist under the second prong of § 1132(e)(2), which allows venue where the breach occurred. Indeed, the Court broadly hinted that venue did *not* lie under the "resides or may be found" prong of § 1132(e)(2).

This Court recognizes that plaintiffs need to satisfy just one of the ERISA venue provisions articulated in § 1132(e)(2).... Welfare Trust presents convincing arguments as to why **the Northern District of Illinois does not qualify as a proper forum under the first and third options articulated in § 1132(e)(2).** We need not address these arguments, however, because we conclude that the Hospitals satisfy the second forum option under § 1132(e)(2), which provides for proper venue in the "district where the breach took place." *Id.,* 1992 WL 309571 at *2–*3 (emph. added).

In *Wallace,* the Eastern District of Texas held that an ERISA plan could "be found" in that Judicial District. But the *Wallace* plaintiff/participant was employed in the Eastern District and received his pension checks in the Eastern District of Texas. *Id.,* 659 F.Supp. at 832. That cannot be said of the Plaintiffs in the case before this Court, who did not work in the Southern District of Illinois, did not earn pension credits in the Southern District of Illinois, and did not receive pension checks in the Southern District of Illinois.

In the case at bar, the record discloses that of the 2,740 retired Delta pilots, only two reside in the Southern District of Illinois (*see* Piper Affidavit, p. 8). As to the two named Plaintiffs herein (one retired, one active), the record does not even clearly establish that they both reside within this District. The complaint states that John Waeltz lives in Belleville, Illinois, within this Judicial District. But Waeltz, who retired from Delta in August 1997, recently moved to the State of Florida.

He never received a single benefit check in the State of Illinois. He receives his benefits in University Park, Florida. The record before this Court indicates that no benefits were ever paid in this District.

Herbert Johnson, Jr. resides within this Judicial District, but he is actively employed by Delta as an MD88 Captain based in Atlanta, Georgia (*see* Piper Affidavit, p. 8). Since he is not yet retired, he has never received a single pension check in this Judicial District.

Neither Waeltz nor Johnson (nor any other putative class member) worked or performed any employment-related duties in the Southern District of Illinois. Clearly, the largest number of retired Delta pilots live in Georgia. 585 retired pilots reside there. Another 499 retired pilots live in Florida (*see* Piper Affidavit, p. 9). The Plan is administered in Atlanta, Georgia. The documents related to administration of the Plan (including the determination of lump sum distributions and other benefits) are maintained in Atlanta, Georgia. Consultants from Northern Trust Retirement Consulting, the independent actuaries who assist the Plan in calculating lump sum payments due Plan participants, reside and maintain their offices and records in Atlanta, Georgia.

On the record before it, this Court simply cannot conclude that the Plan "resides or may found" in this District. 28 U.S.C. § 1406(a) provides that when venue is improper where a case was filed, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1406 gives district courts broad discretion on whether to dismiss or transfer a case with improper venue. *See, e.g., Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir.1986). Because venue does not lie in this Court, and because this action could have been brought in the Northern District of Georgia, this Court shall dismiss this action.

▬ At the March 29th hearing, counsel also presented arguments for and against transfer under 28 U.S.C. § 1404(a). The Court has found that venue is not proper in this District under § 1132(e)(2). Assuming, *arguendo,* that (as Plaintiffs strenuously urge) venue *is* proper here, transfer then would be appropriate under § 1404(a), which provides that a district court may transfer any civil action to any other district or division where it might have been brought, for the convenience of the parties and witnesses, and in the interest of justice. To secure a § 1404(a) transfer, the movant must demonstrate: (a) that venue is proper in the transferor district; (b) that venue and jurisdiction are proper in the transferee district (N.D.Georgia); and (c) that transfer will serve the convenience of the parties and witnesses and promote the interest of justice. *See, e.g., Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986). Thus, even if venue were proper here, the Court would not keep this case but would transfer it to the Northern District of Georgia, which is a "clearly more convenient" forum than this District. *Id.*[3]

### III. *Conclusion*

Because venue is not proper here, the Court **GRANTS in part** and **DENIES in part** the Plan's motion to transfer or dis-

---

**3.** The Court reiterates that venue is not proper in the Southern District of Illinois. But *if* the Court accepted Plaintiffs' argument that venue lies here, the record indicates that venue and jurisdiction are proper in the Northern District of Georgia, transfer to the Northern District of Georgia would serve the convenience of the parties and witnesses, and transfer to the Northern District of Georgia would promote the interest of justice.

miss (Doc. 4). The motion is *denied* in that it seeks transfer of the case to the Northern District of Georgia. The motion is *granted* in that the Plan alternatively seeks (and the Court now grants) dismissal of this case. The Court hereby **DISMISS-ES** this action pursuant to 28 U.S.C. § 1406(a). Dismissal shall be without prejudice.

For docketing purposes, this dismissal renders MOOT Plaintiffs' motion for class certification (Doc. 2) and Plaintiffs' motion for partial summary judgment (Doc. 46).

**IT IS SO ORDERED.**