Richard A. COLE, M.D., Plaintiff,

v.

CENTRAL STATES SOUTHEAST and
Southwest Areas Health and
Welfare Fund, Defendant.

No. CIV.A. 00–11573–MLW.

United States District Court,
D. Massachusetts.

Sept. 30, 2002.

Richard A. Cole, M.D., Newburyport,
MA, for Richard A. Cole, M.D., Plaintiff.

James J. Ciapciak, Ciapciak & Associ-
ates, Norwood, MA, for Central States
Southeast and Southwest Areas Health
and Welfare Fund, Defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Defendant Central States Southeast and
Southwest Areas Health and Welfare
Fund ("Central") has moved to dismiss for
improper venue, or alternatively to trans-
fer venue to the Northern District of Illi-
nois. This court referred that motion to
the Magistrate Judge for a Report and
Recommendation.

On January 3, 2002, Magistrate Judge Robert B. Collings issued his Report and Recommendation. Both parties filed objections to it. This court is required to decide *de novo* the portions of the Report placed in dispute by the objections. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R.Civ.P. 72(b); Local Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts. As ordered on August 26, 2002, each party filed a supplemental memorandum. The court has considered the Report and Recommendation as well as the written submissions of the parties. For the reasons discussed below, the court finds the Magistrate's Report and Recommendation persuasive and is, therefore, denying defendant's motion.

Under the law of the First Circuit, process was properly served and this court has personal jurisdiction over the defendant. Plaintiff's action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, a federal statute providing for nationwide service of process. *See* 29 U.S.C. § 1132(e)(2).

When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment. Inasmuch as the federalism concerns which hover over the jurisdictional equation in a diversity case are absent in a federal question case, a federal court's power to assert personal jurisdiction is geographically expanded. In such circumstances, the Constitution requires only that the defendant have the requisite "minimum contacts" with the United States, rather than with the particular forum state (as would be required in a diversity case) . . . . . [W]hile courts in federal question

cases have found that sufficient contacts to justify the assertion of personal jurisdiction exist whenever the defendant is served within the sovereign territory of the United States, the basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule. In other words, though personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir.1992) (internal quotation marks and citations omitted); *see also Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir.1991); *Univ. of Mass. Med. Ctr. v. C & M Corp.*, 16 F.Supp.2d 110, 111 (D.Mass.) (Gorton, J.). There is no dispute that Central was properly served. Therefore, under 29 U.S.C. § 1132(e)(2) and Federal Rule of Civil Procedure 4(k)(1)(D), this court has personal jurisdiction.

As Judge Nathaniel Gorton has noted, it is somewhat "anomalous [to] interpret[ ] defendants' rights to Due Process under the Constitution as coextensive with Congress' statutory provision for service of process." *Univ. of Mass. Med. Ctr.*, 16 F.Supp.2d at 112. This court too questions whether the national contacts test should be deemed sufficient to safeguard defendants' Due Process rights under the Fifth Amendment or whether, as the Tenth Circuit has held, "due process requires something more." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211–13 (10th Cir.2000). Nevertheless, the law of the First Circuit is clear and must be applied by this court.

■ Central also argues that venue is not proper in the District of Massachu-

setts. Venue in an ERISA action is proper in any district that falls into one of the following four categories: (1) where the plan is administered; (2) where the breach took place; (3) where the defendant resides; or (4) where the defendant may be found. *See* 29 U.S.C. § 1132(e)(2).

Cole asserts that venue is proper under either the second or fourth alternative. The court finds the Magistrate Judge's recommendations to be thorough, carefully reasoned and persuasive. For the reasons stated by the Magistrate Judge in his January 3, 2002 Report and Recommendation at pages 7–12, the court finds that Central cannot be found in the District of Massachusetts for purposes of satisfying 29 U.S.C. § 1132(e)(2).

■ The question of whether venue is proper because the breach took place in Massachusetts is more challenging. The Magistrate Judge notes a split in authority on whether the place of breach is the place where payment was denied or the place where payment was to be received. *See* June 28, 2001 Rep. & Rec. at 11–12. Adopting a contracts analysis, the court agrees with the Magistrate Judge's conclusion that the place of breach is the place where payment was to be received.

■ A contrary conclusion would be at odds with both the language and purpose of 29 U.S.C. § 1132(e)(2). The phrase "where the breach took place" does not exist in isolation; it is part of a larger statute and must be read in context. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). If the place of breach were the place where benefits were denied, the place of breach would always be the place where the plan is administered. This would make the first two venue options in § 1132(e)(2) coextensive. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so

construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews,* 534 U.S. 19, 122 S.Ct. 441, 449, 151 L.Ed.2d 339 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted)).

■ Furthermore, the intent of Congress in passing ERISA was "to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants." H.R.Rep. No. 93–533, reprinted in 1974 U.S.C.C.A.N. at 4639, 4655; *accord* S.Rep. No. 93–127, reprinted in 1974 U.S.C.C.A.N. at 4838, 4871. Therefore, ERISA venue provisions should be interpreted so as to give beneficiaries a wide choice of venue. *See Keating v. Whitmore Mf'g Co.,* 981 F.Supp. 890, 892 (E.D.Pa. 1997) (citing cases). The place where payment is due is typically the beneficiary's home district. Therefore, interpreting "the place where the breach took place" to mean "the place where payment was to be received" not only gives all words in the statute meaning and significance, but is also consistent with the intent of Congress and the President in enacting ERISA.

In this case, the claim was finally denied and payment became due after the plaintiff, the beneficiary's assignee, moved to Massachusetts. Therefore, the place of the breach is Massachusetts and venue is proper in this District. For the reasons explained by the Magistrate Judge in his June 28, 2001 Report and Recommendation at pages 13–18, the court finds unpersuasive Central's argument that the place of breach remains with the beneficiary

even if the payment is due elsewhere because the claim has been assigned.

■■■ There is a presumption in favor of the plaintiff's choice of forum. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 635 (1st Cir.2001). Moreover, this case is to be decided on an administrative record. Thus, there are no questions to be considered regarding the convenience of the witnesses, which is often a decisive consideration in resolving a motion for a change of venue. *See Brant Point Corp. v. Poetzsch,* 671 F.Supp. 2, 3 (D.Mass.1987). Therefore, the defendant has not met its burden of demonstrating that a transfer to the Northern District of Illinois is warranted for the convenience of parties and witnesses. *See* 28 U.S.C. § 1404(a).

Accordingly, it is hereby ORDERED that:

1. The Defendant's Motion to Dismiss for Improper Venue, or Alternatively to Transfer Venue to a More Convenient Forum (Docket No. 36), is DENIED.

2. The parties shall confer and, by October 21, 2002, propose a schedule for the briefing of cross-motions for summary judgment, which will be addressed by this court rather than the Magistrate Judge.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, *TO TRANSFER VENUE TO A MORE CONVENIENT FORUM (# 36)*

COLLINGS, United States Magistrate Judge.

### I.  Introduction

Plaintiff Richard A. Cole, M.D., (hereinafter "Cole") filed a four count complaint (# 1) on August 4, 2000, in response to which defendant Central States Southeast And Southwest Areas Health And Welfare Fund (hereinafter "Central States" or the "Plan") submitted both an answer (# 3) and a motion to dismiss or to transfer venue. (# 4) On June 19, 2001, the dispositive motion was referred to the undersigned for action pursuant to 28 U.S.C. § 636(b). (# 16) Nine days later I issued a Report and Recommendation (# 19) wherein I concluded:

> For the reasons stated, I RECOMMEND that Defendant's Motion To Dismiss Or, Alternatively, To Transfer Venue (# 4) be DENIED on the ground that the alleged breach occurred in Massachusetts and that a transfer is not appropriate. If the District Judge to whom this case is assigned disagrees with the conclusion that the alleged breach occurred in Massachusetts, I RECOMMEND that the plaintiff be permitted to do some discovery on the underlying facts upon which a decision can be made as to whether the Plan is "found" in Massachusetts.

Report And Recommendation # 19 at 23.

Central States timely filed an objection (# 21) to the Report And Recommendation together with supporting papers. (## 22, 23) Cole, in turn, filed an objection (# 24) to the defendant's objection.

In due course the District Judge to whom this case is assigned issued an Order (# 29) wherein he wrote as follows:

> The court has considered the June 28, 2001 Report and Recommendation of the Magistrate Judge and the defendant's objections to it. The issue of whether venue in Massachusetts is proper pursuant to 29 U.S.C. § 1132(e)(2) because the breach took place in Massachusetts is challenging. However, this question would be moot if Massachusetts is a jurisdiction "where [the] defendant . . . may be found." *See* 29 U.S.C. § 1132(e)(2). As the Magistrate Judge

wrote, discovery is required to develop the information necessary to decide if the defendant is "found" in Massachusetts for the purposes of this case.

Accordingly, for the reasons described in the Report and Recommendation (Docket No. 19), Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue (Docket No. 4) is hereby DENIED without prejudice.

Order # 29.

During a telephone conference after the entry of Judge Wolf's Order, the defendant's attorney advised that the Plan was still contesting venue. It was agreed that in order to address the issue of whether Central States is "found" in Massachusetts, the parties would submit a stipulation with respect to the defendant's activities in the Commonwealth. (# 34) That stipulation (# 35) was filed on November 15, 2001, followed thirteen days later with a renewed motion by Central States to dismiss for improper venue or to transfer (# 36) and a memorandum in support thereof. (# 38) Cole "objects" to the motion to dismiss (# 40) and has submitted a memorandum of law (# 41) detailing his opposition. With the record now complete, the renewed motion to dismiss stands ready for decision.[1]

## II. The Facts

The prior Report and Recommendation (# 19) is incorporated herein by reference and familiarity with it is presumed. The sole issue extant[2] in the defendant's mo-

tion to dismiss is whether venue is proper in Massachusetts under 29 U.S.C. § 1132 because Central States may be found here.[3] In these circumstances, the factual recitation shall be abbreviated to those facts necessary for context and to resolve the outstanding question.

First the parties shall be identified as they were in the earlier Report and Recommendation: At all pertinent times, Cole was a medical doctor authorized to engage in the practice of medicine in the Commonwealths of Pennsylvania and Massachusetts. (Complaint # 1 ¶ 1) In Pennsylvania where he practiced medicine as a professional corporation, Richard A. Cole, M.D., Inc., the plaintiff maintained his principal place of business in Erie. (# 1 ¶ 1) At present Cole is a resident of Newburyport, Massachusetts. (# 1 ¶ 1)

Regulated under the Employee Retirement Income Security Act ("ERISA"), Central States is an employee welfare benefit plan which provides benefits to its participants. (# 1 ¶ 2) The administrator of the Plan is located in Rosemont, Illinois. (# 1 ¶ 2)[4] According to the plaintiff, one of his patients, Barbara McClellan ("McClellan"), had contracted with Central States to provide her with health care benefits and the "Plan had promised to pay all her doctor bills." (# 1 ¶ 2)

Cole provided medical treatment to McClellan at his office in Erie, Pennsylvania. (# 1 ¶ 4, Exh. 1–5) Any and all claims of McClellan against Central States have

---

1. The Defendant's Motion To Dismiss For Improper Venue, Or Alternatively, To Transfer To A More Convenient Forum (# 36) has been referred to me for the issuance of a Report and Recommendation as to disposition under 28 U.S.C. § 636(b).

2. Nothing in the defendant's brief (# 38) persuades me to revisit the issues already decided in my June 28th Report and Recommendation.

3. Title 29 U.S.C. § 1132(e)(2) provides that an ERISA action to recover benefits due may be brought by a plan participant or beneficiary "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found...."

4. Central States has admitted these identifying facts in its answer. (Answer # 3 ¶ 2)

been assigned to Richard A. Cole, M.D., Inc., which in turn assigned them to the plaintiff as remuneration for his services to the corporation. (# 1 ¶¶ 1, 3) Cole alleges that Central States owes him $2,306.00 for medical services rendered to McClellan, benefits which, to date, the defendant has refused to pay.

"Central States covers about 133,000 active participants and retirees throughout the United States." (Affidavit of Michael E. Newman # 6 ¶ 11) The parties have stipulated to the following facts which shall be quoted verbatim:

1. Six active Covered Individuals of the Central States, Southeast and Southwest Areas Health and Welfare Fund reside in Massachusetts. They are James Brown, Gary Roy, Eric Leonard, John Donahue, Robert Angel and Laudie Ballard. All these active Covered Individuals have plan C6 coverage and all are employees of Logistic Personnel Corporation.

2. Mr. Robert Roy is also an active Covered Individual of the Central States, Southeast and Southwest Areas Health and Welfare Fund residing in Massachusetts. His coverage is based upon Cobra self payments he is making.

3. Two other persons may be active Covered Individuals residing in Massachusetts. However, Central States does not have information that either of these two persons is still alive. Mr. Thomas Owens, if he is still alive, would be 97 years old. Central States has received no claims submitted for him since 1994. Mr. James Paradise would be 95 years old if he is still alive. The last claim submitted for him to Central States was on March 10, 2001 for treatment of cardiac arrest.

4. Mr. George Young, Jr. had been a Covered Individual but he is retired and is no longer covered by Central States (he is on Medicare), however, his wife still has coverage.

5. Mr. George Hansen has retiree coverage.

Stipulation # 35.

The facts set forth in paragraph 1 above have been more fully fleshed out in the Supplemental Affidavit of Michael E. Newman (# 42) as follows. Logistics Personnel Corporation[5] has been purchased by Consolidated Personnel Corporation which is located in Atlanta, Georgia. The six active Covered Individuals identified are all members of the Teamsters Union Local 571 of Lorraine, Ohio. They are truck drivers who, together with their rigs, are leased to Abbott Laboratories. Messrs. Brown, Roy, Leonard, Donahue, Angel and Ballard are employees of Consolidated Personnel Corporation, not Abbott Laboratories. All bills sent to Abbott Laboratories are sent to an office in Chesterfield, Missouri.

### III. Discussion

The contours of the question of whether Central States may be found in Massachusetts were sketched in the previous Report and Recommendation and so shall be literally reiterated herein. In the case of *Varsic v. United States District Court*, 607 F.2d 245, 248 (9th Cir.1979), the Court ruled that a defendant is "found" in a district in which personal jurisdiction over the defendant was proper. It then went on to discuss the issue of personal jurisdiction in terms of the "minimum contacts" analysis set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, in a later case, *Cripps v. Life Insurance Com-*

---

**5.** Logistics Personnel Corporation was never located in Massachusetts.

*pany of North America,* 980 F.2d 1261, 1267 (9 Cir., 1992), the Court, without citing *Varsic,* held that in an ERISA case, because of the provision for nationwide service of process, there were two alternative ways to acquire jurisdiction over a defendant—"by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction." *Cripps,* 980 F.2d at 1267 (citation omitted). Because the ERISA statute provides for nationwide service of process, the Court in *Cripps* reasoned that since the defendant was served in the United States, such service was sufficient to establish personal jurisdiction and there was no need to engage in the "minimum contacts" analysis.

Hence it appears that in ERISA cases so long as the defendant is served within the United States, personal jurisdiction exists. *Bellaire General Hospital v. Blue Cross Blue Shield,* 97 F.3d 822, 825–32 (5 Cir., 1996). However, in order to determine where a defendant is "found" for venue purposes, the "minimum contacts" test is applied. *See, e.g., Peay v. Bell-South Medical Assistance Plan,* 205 F.3d 1206, 1210–11(10 Cir., 2000).

As explained by one Court:

In *Varsic,* the court ruled that venue was proper in a district, and a defendant could be found there, if a defendant had "minimum contacts" with that district, under the standard enunciated in *International Shoe* and progeny. *Varsic [v. United States District Court],* 607 F.2d [245] at 248–49 [(9th Cir.1979)]. This standard has been adopted by several other courts and is what this court chooses to follow. *See, e.g., Turner,* 510 F.Supp. at 542; *Ballinger v. Perkins,* 515 F.Supp. 673, 676 (W.D.Va.1981); *Wallace,* 659 F.Supp. at 831.

Therefore, a defendant may be found in this district if he has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. The defendant's conduct must make it reasonable that the defendant would anticipate being haled into court here. *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This can happen if a defendant "purposefully directs" its activities toward the forum district, even without a physical presence. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Where the defendant's activities connected to the forum are not "continuous and systematic," the litigation must result from alleged injuries that arise out of or relate to those activities. *Id.* 471 U.S. at 472, 105 S.Ct. at 2182; *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

*McFarland,* 699 F.Supp. at 14; *see also, e.g., IAM National Pension Fund v. Wakefield Ind.,* 699 F.2d 1254, 1257 (D.C.Cir.1983); *Central States Southeast & Southwest Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.,* 8 F.Supp.2d 1008, 1010 (N.D.Ohio 1998).

Courts are divided on the question of the extent to which a Plan needs to have participants in a district before it could be said to be "found" in the district. Some cases hold that if a participant works in the district under an ERISA Plan, the Plan is "found" in the district. *Varsic,* 607 F.2d at 249; *Dittman v. Dyno Nobel, Inc.,* 1998 WL 865603, at *5 (N.D.N.Y.1998); *Ransom v. Administrative Committee,* 820 F.Supp. 1429, 1433 (N.D.Ga.1993); *Ballinger v. Perkins,* 515 F.Supp. 673, 676 (W.D.Va.1981). Others have indicated that such facts are insufficient to establish venue. *Waeltz v. The Delta Pilots Retirement*

*Plan,* 137 F.Supp.2d 1091, 1095 (S.D.Ill. 2001). Yet another Court has held that the "fact that there are or were contributing employers and retirees receiving benefits in this district, other than the Plaintiffs, is not enough to satisfy the minimum contacts test. . . ." *Seitz v. Board of Trustees,* 953 F.Supp. 100, 102 (S.D.N.Y.1997).

As has been noted, Cole is not a beneficiary of the Plan. Rather, he is an assignee. The beneficiary of Central States was McClellan who received medical treatment from Cole at his office in Erie, Pennsylvania. It is the benefit payments for those office visits that is sought in this lawsuit. Massachusetts has absolutely no relationship whatsoever with these underlying events. Although I have concluded that the breach occurred in this Commonwealth, that fact is fortuitous, i.e., Cole subsequently moved from Pennsylvania to Massachusetts and thus was entitled to receive the benefits here, as opposed to a consequence of any deliberate action undertaken by the Plan.

The parties have stipulated that the maximum possible number of covered beneficiaries in Massachusetts is eleven, although the likely number is nine. When juxtaposed against the total one hundred thirty-three thousand participants in the Plan, the Massachusetts number is minuscule. Of the seven active participants in the Plan who live in Massachusetts, at least six[6] are members of the Teamsters union in Ohio and are employed by a corporation located out of state. There is no employer in the Commonwealth that contributes to Central States. Again, these circumstances indicate that Central States' presence in Massachusetts is by chance in that although they are employed by for-

eign[7] corporations, some of the participants of the Plan happen to live in Massachusetts.

From all that appears, that the defendant is even minimally present in Massachusetts is due to happenstance. There is nothing in the facts to indicate that Central States has "purposely directed" its activities toward the Commonwealth or otherwise engaged in conduct that would make it reasonable for the Plan to anticipate having to defend a lawsuit here. The small number of covered beneficiaries living in Massachusetts alone is not enough to support a conclusion that Central States may be found here.

### IV. Recommendation

For the reasons stated in the June 28, 2001 Report and Recommendation (# 19), I RECOMMEND that Defendant's Motion To Dismiss For Improper Venue, Or Alternatively, To Transfer Venue To A More Convenient Forum (# 36) be DENIED on the ground that the alleged breach occurred in Massachusetts and that a transfer is not appropriate. If the District Judge to whom this case is assigned disagrees with the conclusion that the alleged breach occurred in Massachusetts, I RECOMMEND that Defendant's Motion To Dismiss For Improper Venue, Or Alternatively, To Transfer Venue To A More Convenient Forum (# 36) be ALLOWED on the ground that the defendant is not "found" in Massachusetts.

### V. Review by the District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to these proposed findings and recommendations must file a specific written objection thereto with the Clerk of this

---

**6.** No specific information is proffered with respect to Mr. Robert Roy except that his coverage is based upon his own Cobra payments.

**7.** Foreign meaning that the company is not incorporated in Massachusetts nor does it have a place of business here.

Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

January 3, 2002.